Good morning. You may be seated. We'll ask the clerk to call the first case, please. Case number 11-2740, Herbert Sorack v. Illinois State Board of Elections. For those of you who may be uninformed as to our procedures, each side is allotted 15 minutes to present its arguments in a case. We're not bound by those time restrictions, and if you're familiar with our practices, we do not strictly watch the minute handle on the clock. We're more concerned with getting answers to whatever issues and questions we might have about your case, and those issues are the reason for setting oral arguments rather than strictly relying on your briefs. But any extra time which you may get is to satisfy our needs from this side of the dais rather than give you extra time between what you would have already said orally and what you said in your briefs we would deem to be sufficient. So with that, I will ask each side to step up, if you're going to be arguing the case, to identify yourself for the record, at which time the appellant could proceed with the argument while the other side goes back to your table. I'm Herbert Sorack, the petitioner in this case at Perry Pro Se. Thank you. Timothy McPike, Assistant Attorney General on behalf of Lisa Madigan, Attorney General of Illinois on behalf of the Illinois Board of Elections. And, Your Honor, we will divide our time. Thank you. Good morning, Your Honor. This is Michael Kasper for Respondent, the Political Committee, Citizens for Women in Schools. I just, before we begin, as far as Mr. McPike and Mr. Kasper, are you going to be, your briefs pretty much both take the same positions. I mean, you argue the same. Are you going to both argue, you said you were splitting your time. What did you mean? I believe that we're not going to argue the same points. You're going to coordinate your arguments.  All right, fine. All right. Thank you, Your Honor. It's still the same 15 minutes that you'll be sharing. And, Mr. Sorack, you are arguing you're appearing pro se. That is correct. Do you have any legal background? Only in that two of my kids are officers of the court, fairly newly minted. Pardon me? Fairly newly minted officers of the court, one here and one in New York. All right. You may proceed, Mr. Kennedy. May it please the Court. I'm Herbert Sorack, petitioner. If I may, I'll briefly outline the case. I'm here because I'm appealing a September 2011 final order of the State Board of Elections. That final order found that my original complaint against the Respondent Committee had been filed, not on justifiable grounds. Mr. Sorack, I might caution you. That microphone does not amplify your voice. It simply records it. Okay. So be aware of that to make sure that we could distinctly hear what you're saying. Okay. I don't want to go over in too much detail the procedures that I've already gone through. I filed my complaint. The closed preliminary hearing followed shortly thereafter. The report of the hearing officer found against me finding lack of justifiable grounds. I then went to the August 2011 board meeting of the Board of Elections. There was a final order issued again against me. I took the procedural step of the motion to reconsider, so I went back to the Board of Elections in September. And then yet another final order, I guess the final, final order was issued. And pursuant to the code and administrative code, I appealed to this court. Let me just briefly summarize the facts. The Committee of Citizens for Willamette Schools formed in January of 2011. Its purpose, as stated on the D-1, was to support the District 39 school board referendum. The date of the election was April 5th of 2011. The Committee of Citizens filed its first D-2 quarterly report on time on April 15th, so 10 days after the election. The original D-1, or excuse me, D-2 quarterly report listed an in-kind contribution of some $3,435, as you've seen in the brief. You mean $3,000, right? $3,435, which was listed in the first D-2 as an in-kind contribution for websites. I noticed in looking at the D-2, seeing that contribution, I looked for the corresponding A-1, because I had not seen one in the days before the election. Just for the record, I was a rather vocal opponent of the referendum, had my own political committee, and so I was kind of looking out, as it were, for the other side's actions. I've been doing political committees for many years, and I've always tried to be scrupulous in my reporting. Now, as I said, in checking the Board of Elections website, I found that there had been no A-1 filed within the required two business days of the receipt. The receipt was noted in the... Eventually, though, that was amended, wasn't it? Yeah, but that's the whole point of my making... But it was amended, and then the citizens for Wilmette Schools withdrew that as a contribution and indicated that we never had to file that as a contribution in the first instance. That's correct, yeah. And that included the donor's affidavit? The donor's affidavit was not in the amended D-2. It was just presented at the original closed hearing. But eventually, the question we face is whether primarily this is a contribution... Exactly. ...or it's exempt from the reporting requirements. Yeah. So there we are, because we do know the facts. Okay. Mr. Sarek, if I might ask you, what would the consequences be if you were... if your position were the correct one and the Board's position was erroneous? What relief would you be entitled to? I would only ask that my complaint number one be said to be... show justifiable grounds, and then the appropriate action taken by the Board. Now, the election code itself provides minimal, if in fact zero, if not zero penalty for first-time offenses. This is a minor offense. I'm not looking to see anyone punished monetarily. I'm simply trying to see that the election code provisions are upheld, as I have always had to do myself. But the referendum was already held. Yes, it was, yes. So what can be done at this point in time that would not render your case moot, namely a case that, regardless of its merits, at this point in time, nothing could be done with it? So that's why I'm asking you, what is there still left to do? Well, Your Honor, this has nothing to do with whether or not I liked the referendum or not, or whether I'm seeking to overturn it or get my money back. There's nothing to do with it. It's a separate thing. All I'm trying to do, now it's been a year, is to see that the proper process is followed and that the proper reporting is done. That's all. I'm not asking for... You just want to make your point, so to speak. Well, yes. You want a contribution interpreted to mean that a self-employed individual who volunteers her time creating a website, that should be reported as a contribution? Yes. All right. So tell us a good reason why an individual person who's self-employed should not be able to volunteer and contribute in-kind contributions, such as creating a website, but people who work for someone else can do that. So what would be the... Give us a reason or rationale for this interpretation, because that's what we need to hear. Okay. In looking at the election campaign finance disclosure... Mr. Sorek, let me add one thing to that question so that you can be as clarifying as possible. How would we distinguish, or should we distinguish, between the contribution through services made in engaging as a member of a given political committee, such as yourself, donating your time and perhaps circulating material, literature, and perhaps even helping to assist in the printing or in the writing of this literature? Would you distinguish between that kind of service and the service performed here, and if so, how, so that if we write our opinion, we don't throw the baby out with the bat? I anticipated your question on that, and it's an important one to consider, because clearly for any number of years, voluntary services, precinct walking, envelope stuffing, and so forth have not been reported, and rightfully so. I will take the campaign finance requirements as a whole, and if you look through the pages of the part of the Act dealing with disclosures, there is a tremendous emphasis on how contributions are to be accounted for and specifically determining a value for those contributions. Now, I can make a fairly bright line between what we refer to as the voluntary, the traditional voluntary services provided in a campaign, and things of this sort that are multi-thousands of dollars. I think the key thing is, in fact, even in the Board of Elections Guide for Campaign Disclosure, they do discuss voluntary services. They don't define them. They note that things such as envelope stuffing and so forth, certain de minimis activities, are not to be reported. Now, I have to distinguish those, and do distinguish those, between free time services not done by a professional, and the contribution in question which was donated, or in my view contributed, because it was a work of a professional in that field who took it upon herself to provide the committee with an amount to the dollar of what her services were worth. Well, your argument would be that there's a difference between a lawyer who spends the evening stuffing envelopes and a lawyer who spends some time in court representing a committee, and that that would make a difference because it's professional. For example, the stuffing of the envelopes is voluntary, but the going to court is not. Where do you find that difference in the statute? The only way I can find it is by inferring it. The requirement is quite clear in one particular section of the code, and that is, if I may refer to it, I know I shouldn't be, I won't be reading it, but it's section 9-1.12. And this discusses the anything of value concept. Anything of value refers to whether it's either in monetary terms or not monetary terms, in which case there has to be an ascertainable market value assigned to it. Now, even if it's a lawyer spending the weekend stuffing envelopes, that's his free time, or her free time. But it has a market value. No, and I would say the market value of that is zero, because that person is not in the profession of stuffing envelopes, in the same way a precinct walker isn't a professional precinct walker. How about an ordinary non-professional person who donates time? Now, of course, we're in a bad labor market now, but in a good labor market, anybody's time, if he is or she is within the working age that is not too young or not too old so as to retire, that labor has a market value, whether it's professional labor or whether it's ordinary labor. It is, in that sense, a marketable commodity with rules of supply and demand determining value. How do we distinguish that other than somehow the label of professionalism? And if that were so, that means that any, for example, social organizer, like our president formerly was, if he were to use the talents as a community organizer to work for a political group, you would say that labor has to be reported. Is that right? If that's his profession. Now, again, the issue in the code with regard to disclosure always comes down to value, putting a dollar value to something, always. So on the one side you have a professional. Now, I'll pre-answer a question that was posed already by Council for Citizens. If that person were not a professional website designer and did the same thing, and it's not too hard to do these days, would I be requiring under my theory that that contribution be reported as multi-thousand? No, I wouldn't. Under my theory it would still be zero because that's a free time activity not done by a professional. I have one more question. Yes. What if we don't have somebody who is academically licensed to enter into a given profession or career, but is self-taught? Where do we draw the line between someone who is able to compose a website because they have a knack with computers as opposed to someone who necessarily went to school for it? Well, the line to draw between them is, again, I have to come back to the ascertainable market value. And this is a gray area because nowhere in statute do you find a definition of what a volunteer is. In fact, you don't find really a definition of what a contribution is. You have page after page of discussion about what a contribution is, all the requirements. If it's this, yes. If it's $150 or more, you have to report it with your name. If it's $500 or more, you have to report it with your employer and so on and so forth. So the entire thrust of the campaign finance act is on disclosure. And I am completely comfortable with a, as the board even says, in its own guidelines, a free time voluntary activity being valued at zero. But when faced with this to the dollar amount of several thousand dollars, I drew an analogy, if you will. So you think this case hinges on the fact that there was an amount given for this? Yes, exactly. If she initially said that this was zero. Well, we wouldn't even know about it, for one thing. About $5. If she provided that as the value, I'm here. Well, I asked you a question I still would like to get an answer. You do have time for rebuttal. But my question is, why should an individual be discriminated against in terms of volunteering, a self-employed individual? Why should that person be treated differently than someone else who's employed? That person is not really being discriminated against. That person one way or the other has to abide by the provisions of the code. And I use an example. If someone is working for an employer, they don't have to report it. But if they're self-employed, they do. And my question to you is, what logical reason would be for doing this in the legislation? Okay. I'm glad you asked that. It reminds me I wanted to answer that. I mentioned this as a canon of construction. Now, I have to ask rhetorically, why would the legislature have inserted that description of voluntary services within a short sentence that starts with a predicate condition that in an employer-employee relationship, the employer is to be reporting. So this is really all about who reports. Mr. Sorek, maybe that statute wasn't so much interested in identifying certain types of free and voluntary labor as not being reportable, but in marginalizing and putting limits on the reportability of what an employer does. So that if the employer would make a charge, that would have to be reported. But if the worker volunteers, it doesn't. But leads to the discretion of rational interpretation that it's an a fortiori, so to speak, that if somebody is working for somebody else and volunteers their time, it doesn't have to be reported, even though they may even get paid by the employer for the time that they're volunteering. On the other hand, a fortiori all the more, so to speak. When someone is not being paid by anybody and is volunteering, or to view it in another place, when the employer is oneself. Well, I can't completely intuit the legislative intent, except to point out if, as the Council for Citizens has, that all voluntary activities are not contributions. Why then did the legislature simply put that in the statute without the predicate of the employer-employee relationship? So there must have been some reason for putting that as the subordinate clause, as it were, to the setup being we have an employer-employee relationship, time is being contributed, or money is being contributed, or time, and make sure, dear employer, that you report it. Now, the only way I can see that this would have any usefulness rationally would be, let's say, the accountant or the lawyer whose services have been donated to a campaign. He's being reimbursed by the employer, of course. But that person may have a lot of sympathy for their campaigns. You know, maybe I can help you out here. In my free time. So it is that off-the-clock, even though it may be a salaried position, it's the off-the-clock nature, not only of that, let's say, lawyer or accountant, but anybody else working after they come home from work on the weekends. That's the key distinction I want to make. Mr. Sarek, I think we've used up our time plus. You'll have a couple of minutes for rebuttal. Thank you. Unfortunately, we have, depending on your perspective, we have a couple of other cases. Thank you. Please. Please, the Court, Your Honor. We urge that the Court affirm the Board's decision for two reasons. First of all, as you're well aware, Ms. Gottlieb's contribution was purely an individual service. And as your questions indicate, we suggest that the correct interpretation of statute is that all individual services are exempt, not just those of people who are employed. Therefore, Ms. Gottlieb's contribution was nothing but an individual service,  Moreover, even if the Court should find that, as Mr. Sarek argues, that that applies only to people who are employed, Ms. Gottlieb's contribution otherwise did not constitute an electioneering communication because it was just simply, as we argued in our brief, someone constructing an empty billboard upon which the Board put their information. And the Board communicated to the public, as indicated by the copyright notice on the website. What if a famous painter donates a million-dollar work of art to the campaign? The work of art would be an individual service, except for the cost of materials. Which is de minimis. Yes. And I guess if it was Guernica and had a political message there, it would be a campaign contribution, but it would be an electioneering communication, perhaps, but it would still be just the individual service. Well, let's make it a little more complicated, where he donates it just to hang on the wall of the campaign headquarters to make it a little more interesting or pleasant to be there, with no political message. Then it would not be an electioneering communication, and it would still be... So we're not talking about this, I wanted to make sure it's not. Right. It would not be an electioneering communication, nor was this. And it would be his individual services, other than the cost of his paint. So that would not be covered by the statute. It would not be reportable. So you might say that the statute leaves something wanting at either end, because it's kind of excessive to think that you could donate a $150 million piece of art, which the painting just sold for, the screen just sold for $130 million. And yet not have that be reportable. Only the painter himself or herself could donate. Certainly anybody else donating it would be a contribution. If there are no further questions. Thank you. Thank you. Good morning, Your Honors. Michael Kasper on behalf of the Citizens for Wilmette Schools. And I want to talk a little bit, I'm going to start by talking about... This case seems like a simple case about a school referendum and whether or not the reports were filed on time. But what Mr. Stark is urging is one of the most destabilizing arguments that's been presented in the campaign finance system anywhere in the country that I'm aware of. No state in the union, the federal government, nor this board or any court in this state, has ever held that volunteer services are contributions, ever that I'm aware of. So let's talk about the painter. But in your brief, Mr. Kasper, don't you make an exception for charges incurred by the volunteer in the equipment or tools or any other accessories that he needed to volunteer? So you don't have a pure road ahead when you volunteer your services if those services engender a certain kind of expense? Correct. I believe that the exemption applies only to your services, not to the incumbent costs or out-of-pocket expenses. So let's talk about the painter, Picasso. If Picasso were to take a painting that's worth $150 million that he painted off the wall at Christie's and donate it to the campaign, I think that's a contribution because that is a physical product that has value. Even though they say that when he was alive he would pay for his lunch with his jottings on a napkin. I've heard that, yes. I've heard that. But if he were to paint, let's say he paints a mural in the campaign office, the cost of the paint and the platforms and whatever else painters use, the job costs and all that, that would be a contribution because those are out-of-pocket expenses that he incurred. But when you were talking about the painting on the wall, didn't it also have to include as part of this contribution the electioneering contribution? Communication, rather. Yeah, I think the electioneering communication, no painting would constitute an electioneering communication because it has to be broadcast to the electorate. So I don't think that that's an appropriate analogy. But the services was what I'm getting at, the painter's individual services. We were talking earlier about an example, George Clooney. If George Clooney were to volunteer to be in your campaign commercial, that's obviously a very valuable thing. But the First Amendment applies to George Clooney just as much as it does to my neighbor who was in a campaign commercial that I was involved in recently. And so this notion of volunteerism is something that applies to everyone. Not just someone who works for someone else, an employee who works for an employer. Right, and if that were the distinction, that if you were self-employed... Well, Mr. Casper, isn't there still something about a product, even though every product, certainly according to Karl Marx, is a result of labor? Right, absolutely. Services. And I agree with that, that the product is a contribution. But what it's not, and when it's a volunteer, is the production. If the production is made by a volunteer, it's exempt from the definition of contribution. Regardless of... Even if it results in a product. Right, sure. That has its own market value apart from the individual who is responsible for it. Correct. And the sweat and tears that go into the production of that product can be exempt from the definition of contribution. Whereas I don't believe the cost of the physical components of it can be. So in this case, even though her services were provided voluntarily, what about the actual website itself? The website itself, the cost, and I'm certainly no expert on websites, so please forgive me. The cost of the licensing fee. I understand that there's licensing fees for these things, hosting fees. Those were borne by the committee. And in the affidavit that Ms. Gottlieb submitted, she applied that she did not incur any of those costs. Had she incurred those costs, I believe that that would be a contribution to the committee, because she paid out of her pocket those costs. And so this notion of professionalism, that there's a value to professionalism, also renders the statute just completely incomprehensible. So you have to run for office. You want to seek out volunteers. Your neighbor to the left is a painter. Your neighbor to the right is a plumber. Under Mr. Sorok's theory, the painter can volunteer to fix the sink in the campaign office, and the plumber can do vice versa. That doesn't make any sense. Or an accountant can review your petitions, and the lawyer can review your books, but not vice versa. That doesn't make any sense. And of this market value business that Mr. Sorok talked about, everything has a market value, not just legal services or accounting services or website design services. Circulating petitions has a market value. I'm told the market value for that is a dollar a signature these days. That's an ascertainable value. Stuffing envelopes, Mr. Sorok says, is a thing of no value. Well, there's a million secretaries in the world who get paid to do that. There's an avoided cost. There used to be this thing called Kelly Girls. I don't know if they still have it, where you could hire temporary office workers. That's the cost that you get to avoid through the use of volunteers. And the disclosure of volunteers runs the risk of rendering the statute unconstitutional in two separate ways that I talk about. The first is this forced disclosure of volunteer names. The case that I cite is the famous one from the U.S. Supreme Court about Alabama, where Alabama required the NAACP to surrender the names of its membership to the state, to the government. And they didn't want to do that, and they prevailed at the Supreme Court. And so that would render it, I believe, unconstitutional, the forced disclosure of your volunteer activities, because that would have a chilling effect on your – But there are monetary donations beyond a certain amount. Like if it's over $150, it has to be reported almost immediately. Yeah, and I believe that those – the statute that we have regarding monetary contributions is – That's a voluntary act, and the Constitution is not – And the Constitution supports that under Buckley v. Vallejo that was decided by the Supreme Court in 1974, because the Supreme Court said that the risk of corruption or the fear of corruption, the appearance of corruption by monetary contributions is outweighed by disclosure because – And this is the most important point. What the Supreme Court said is that a contribution is indirect speech. It's empowering someone else to speak. When you contribute money to a campaign, you're empowering that campaign to speak. But when you speak directly, that cannot be limited. That's why we have this discrepancy in the campaign finance system today where individuals can spend an unlimited amount because that is direct political speech. Volunteerism is direct political speech where you are speaking yourself. That's why I don't believe they can be limited. That's the second reason why I think that Mr. Sorok's interpretation would render the statute unconstitutional, although it wouldn't apply in this case because this is a referendum, and there's no limits on contributions to referendum for the reason I cite in my brief, the U.S. Supreme Court case. But the statute defines contributions the same for referenda committee as it does for candidate committee. So what that means is that a person could volunteer only $5,000 worth of time, whatever that value is. So if a lawyer were to charge $500, they could volunteer no more than 10 hours for a campaign. Any cap on volunteer activity in the area of political speech, I believe, would render the statute unconstitutional. And for that reason, I believe that the board's decision was correct. It is consistent with every interpretation of volunteer activity in the campaign sphere that I am aware of. Of every state in the union, no court anywhere in the country has ever declared volunteer services to be a contribution. The board's decision was right and should be affirmed. I'm happy to take any questions. Thank you, Counsel. Thank you. A couple of minutes. Thank you again, Your Honors. With regard to the board's counsel's assertion that the website in question was not an electionary communication, in the record on page 32 is a screenshot of that website or one page from it. It says quite clearly, vote yes, D39 referendum. Support the MOMET increased limiting rate. And you see a nexus in that page between the committee itself, support MOMET schools, and the designer who in our affidavit said, yes, I designed this. So there's a clear nexus here. But they make the distinction in your opponent's brief that between providing the picture frame, which is the website, and providing the message, which is painting, so to speak. Well, two things with regard to that. The design, which if you look at the screenshot, is something that Ms. Gottlieb contributed. I don't know, and actually I say it makes no difference who contributed the text, because this was done in coordination with one of the requirements of the statute to show that it was an electionary communication. Take a look at the banner at the upper left. That's a design element. The design element itself says, vote yes, D39 referendum. This is indisputably an electionary communication. Now, one distinction council for citizens has made, and also for the board, is that simply designing something isn't communicating it. Well, in the world of the Internet, when you design something and make it available, and there's no evidence that anyone else other than Ms. Gottlieb, the service contributor, had anything to do with this website. As soon as you have designed it and put it on the Internet, the first page view of any person shows that a communication has been made. It's very existence on the Internet, just as a billboard. You wouldn't have to prove that someone saw a campaign billboard to say that was an electionary communication. So the design and putting on the Internet are one in the same with communication. They're inextricably linked. Anything else? Yes. Just one? Yes. And that's with regard to what council for citizens said, with regard to the voluntary nature. I'm not seeking to overturn the First Amendment. I believe I have shown a completely consistent way of defining. But it wouldn't apply to people that are self-employed. The First Amendment wouldn't apply to people who are self-employed, but it does to the individual that works for someone else. No, I'm not asking. No, I'm not restricting anybody's speech. It would restrict that Ms. Gottlieb's First Amendment rights, because the interpretation that you're putting on it would require her or the committee, rather, to report this. But if she were doing this for someone else as the employee. Well, frankly, I'm not seeking and I don't think a decision in my favor would squelch Ms. Gottlieb's First Amendment rights. But let me point, if I may, just one more thing. Directly in statute is the discussion of another place where voluntary services are mentioned. And that's Section 9-1.4B, where the statute or the act, first of all, discusses what are contributions and what are not contributions. And in B, it says, the use of real or personal property, food, beverages, and invitations voluntarily provided by an individual in rendering voluntary personal services on the individual's residential premises, et cetera, et cetera, is not a contribution provided the value of that service does not exceed an aggregate of $150. So here, the very same statute we've been debating actually offers and prescribes a restriction on voluntary service. As soon as it gets the $150 level, it goes from just a de minimis activity to a reportable contribution. So if my decision in my favor would be unconstitutional, then the Campaign Finance Act in this section is itself unconstitutional. So in summary, what I'm asking is that this court find that my complaint had been filed on justifiable grounds, that it be remanded back to the Board of Elections for further adjudication in open hearing, so that I may have available to me the various other tools, dispositions, affidavits, and so forth, that would perhaps clear up some of the questions that have yet to be answered, at least in the record. Thank you very much for hearing. Thank you. This case was well-argued and well-briefed and will be taken under advisement. And if I might, Mr. Sorek, while you may not be an attorney, I see where your children who are got their genes. Thank you.